[No. B031360. Second Dist., Div. Five. Aug. 10, 1989.]

VIRGINIA McMARTIN et al., Plaintiffs and Appellants, v.
CHILDREN'S INSTITUTE INTERNATIONAL et al., Defendants
and Respondents.

**COUNSEL**

James H. Davis for Plaintiffs and Appellants.

O'Melveny & Myers, Charles P. Diamond, David Pettit and Jonathan B. Frank for Defendants and Respondents.

**OPINION**

ROWEN, J.*—Plaintiffs Virginia McMartin and Peggy Ann Buckey appeal from an order sustaining a demurrer to their first amended complaint without leave to amend and dismissing their action against defendants Kathleen "Kee" MacFarlane and the Children's Institute International for damages allegedly arising out of the investigation and prosecution of a criminal child abuse action. We affirm the judgment (order of dismissal).

**FACTS**

In their first amended complaint, plaintiffs named the County of Los Angeles (County), the City of Manhattan Beach (City), Children's Institute International (CII), Kathleen "Kee" MacFarlane (MacFarlane), Astrid Hagar, Bruce Woodling, Robert Philbosian, Wayne Satz, ABC Television Inc. and Does 1 through 200 in an action for:

"1. Breach of a Rule of Law;

"2. Violation of Civil Rights (42 U.S.C. 1983);

"3. Conspiracy to Violate Civil Rights;

"4. Declaratory Relief—Comparative Equitable Indemnity;

---

* Assigned by the Chairperson of the Judicial Council.

"5. RICO 918 [*sic*] U.S.C. 1961);

"6. Breach of Mandatory Duty by District Attorney (Prosecu- [*sic*];

"7. Intentional Infliction of Emotional Distress;

"8. Defamation;

"9. Outrageous Conduct by a [*sic*]

"10. Television Station;[1]

"11. Battery;

"12. Interference with Prospective Advantage;

"13. Negligent Infliction of Emotional Distress."

The complaint sought to recover monetary damages and declaratory relief for the emotional, physical and economic harm suffered by plaintiffs allegedly stemming from the prosecution of criminal charges against plaintiffs for child abuse allegedly occurring at the McMartin Preschool in the City of Manhattan Beach.

This action only involves the demurrer brought by defendants CII and MacFarlane, who are named as defendants in every cause of action except the sixth, "Breach of Mandatory Duty by District Attorney" and the ninth, "Outrageous Conduct by a Television Station—Media Malpractice."

■■■ 2.) The facts pleaded by plaintiffs in their first amended complaint to support their claims of wrongdoing against defendants were as follows: [2]

(1) That CII was retained by the City of Manhattan Beach and the County of Los Angeles "to interview, examine, interrogate and evaluate the alleged victims of child abuse, and to report to [the] City and County whether child abuse had occurred and who the perpetrators were";

(2) That CII was acting through its duly authorized officers and agents, including defendant MacFarlane;

---

[1] The 10th cause of action is, in reality, for invasion of privacy.

[2] In determining the propriety of the trial court's ruling sustaining defendants' demurrer, we must accept as true those facts properly pleaded in the complaint. (*Jones* v. *Grewe* (1987) 189 Cal.App.3d 950, 954 [234 Cal.Rptr. 717].)

(3) That CII reported to the City and County its conclusions that numerous acts of child abuse had occurred at the McMartin Preschool, and that plaintiffs, among others, were perpetrators or probable perpetrators thereof, although CII had no contact with plaintiff nor specific knowledge about plaintiffs at the time such report was made;

(4) That CII violated substantially all standards for interviewing alleged child abuse victims;

(5) That CII's therapists engaged in these improper activities because it was to their personal advantage to do so;

(6) That as a result of CII's conduct, plaintiffs were wrongfully indicted and subjected to a preliminary hearing on charges of child abuse;

(7) That MacFarlane "leaked" testimony and documentary evidence which was subject to protective orders in the criminal proceedings to ABC Television Inc. and its news reporter Wayne Satz; and

(8) That MacFarlane and others suppressed, destroyed and manipulated "evidence such as that discrediting the mental stability and veracity of Judy Johnson, the initial complaining witness against Plaintiff in 1983."

Defendants CII and MacFarlane filed their demurrer to the first amended complaint in September 1987 on the grounds that (1) plaintiffs' state law claims were barred under the absolute privilege of Penal Code section 11172; (2) plaintiffs' state law claims were barred because CII's reports were made in connection with an ongoing criminal investigation and were thus privileged (Civ. Code, § 47, subd. 2); (3) plaintiffs' civil rights and conspiracy causes of action were barred by CII's absolute federal immunity; (4) plaintiffs failed to state a cause of action under the Racketeer Influenced and Corrupt Organizations Act (RICO); and (5) plaintiffs failed to state a cause of action for declaratory relief.

DISCUSSION

I

1. *Child Abuse Reporter Immunity*

Pursuant to Penal Code section 11166, "any child care custodian, health practitioner, or employee of a child protective agency who has knowledge of or observes a child in his or her professional capacity or within the scope of his or her employment whom he or she knows or reasonably suspects has been the victim of child abuse shall report the known or suspected instance

of child abuse to a child protective agency. . . ."[3] (Pen. Code, § 11166, subd. (a).) The failure to report is a misdemeanor, punishable by up to six months in jail or by a fine of $1,000, or both. (Pen. Code, § 11172, subd. (e).) Those subject to this mandatory reporting requirement are absolutely immune from civil or criminal liability for making such a report. (Pen. Code, § 11172, subd. (a);[4] *Storch* v. *Silverman* (1986) 186 Cal.App.3d 671 [231 Cal.Rptr. 27].) ■ Thus, even if an individual designated as a mandated reporter pursuant to section 11166 submits a false report with the intent to vex, annoy or harass an innocent party, civil or criminal liability cannot be imposed. (*Id*. at p. 681; *Krikorian* v. *Barry* (1987) 196 Cal.App.3d 1211, 1217-1218 [242 Cal.Rptr. 312].)

Members of the general public who voluntarily report incidences of child abuse are also protected by Penal Code section 11172, but their immunity from civil or criminal liability is not absolute. They are not protected if they make a report with knowledge of its falsity or with reckless disregard of its truth or falsity. (Pen. Code, § 11172, subd. (a).) " 'The limitation on the immunity for false or negligent reports is necessary to prevent a vindictive former spouse or neighbor from making a knowingly false report.' (State Bar of Cal., Rep. on Assem. Bill. No. 2497 (1979-1980 Reg. Sess.) p. 2.)" (*Storch* v. *Silverman, supra,* 186 Cal.App.3d at p. 680.)

Defendant CII, as identified in the complaint, is "a California non-profit corporation which holds itself out to the public as an independent, professional and objective organization that is expert at the task of assessing whether in fact child abuse has occurred, the nature thereof and the identify [*sic*] of the perpetrator" and MacFarlane is identified as its duly authorized officer and agent. While these descriptions do not specifically identify CII or MacFarlane as "child care custodians," plaintiffs do not quarrel that CII comes within the category of mandated reporters under section 11166, nor that MacFarlane is CII's employee.

■ Plaintiffs acknowledge the broad scope of the immunity granted by Penal Code section 11172, but contend that the activities of defendants which caused them harm were outside the scope of protected child abuse reporting, and that they should be allowed to amend their complaint to plead such facts. Plaintiffs, however, failed to bring before the trial court and have failed to bring before this court any such facts.

---

[3] A "child protective agency" is defined as "a police or sheriff's department, a county probation department, or a county welfare department. It does not include a school district police or security department." (Pen. Code, § 11165.9.)

[4] Section 11172 provides in relevant part that: "No child care custodian, health practitioner, employees of a child protective agency, or commercial film and photographic print processor who reports a known or suspected instance of child abuse shall be civilly or criminally liable for any report required or authorized by this article. . . ."

At oral argument on the demurrer, plaintiffs claimed they would amend to plead MacFarlane's lack of a child care license. Even assuming this were true, this fact alone does not remove MacFarlane from the category of mandated reporters. A "child care custodian" protected under Penal Code section 11172 may be an employee of a licensed community care or child day care facility or a child care institution. (Pen. Code, § 11165.7.) In addition, the inclusion of "commercial film and photographic print processors" and "employees of child protective agencies" in the category of mandated reporters in Penal Code section 11166 clearly indicates that a child care license is simply not a prerequisite for the shield of immunity provided by section 11172.

The protection granted by Penal Code section 11172 encompasses not only the actual act of reporting, but also "conduct giving rise to the obligation to report, such as the collection of data, or the observation, examination, or treatment of the suspected victim or perpetrator of child abuse, performed in a professional capacity or within the scope of employment. . . ." (*Krikorian* v. *Barry, supra,* 196 Cal.App.3d at p. 1223.) Based on the scenario provided by plaintiffs' complaint, we can find no other facts which would take defendants' alleged activities outside the scope of the privilege. Plaintiffs' complaint specifically alleges that CII was retained to interview, examine and interrogate the children from the McMartin preschool. Activities occurring prior to the actual filing of criminal charges against plaintiffs would be privileged since the complaint specifically alleges that CII's involvement commenced upon its hiring by the City of Manhattan Beach and the County of Los Angeles.

Even if, as plaintiffs allege, CII and MacFarlane used unorthodox methods in interviewing the children, defendants are not removed from the protection afforded them by Penal Code section 11172. The manner in which the alleged child abuse is discovered is irrelevant as long as the discovery occurs within the scope of the interviewing observing reporters' employment or in their professional capacity as children's services providers. (*Krikorian* v. *Barry, supra,* 196 Cal.App.3d at p. 1223.)

Finally, plaintiffs contend on appeal that MacFarlane's activities in her romantic relationship with ABC television reporter and codefendant, Wayne Satz, remove defendants from the scope of the privilege afforded them. None of their allegations regarding MacFarlane and Satz, however, form the basis of the causes of action relevant to our discussion here regarding the privilege of Penal Code section 11172.[5] The trial court sustained the

---

[5] As a basis for their fifth cause of action for violation of 18 United States Code section 1961 (RICO), plaintiffs claim that MacFarlane transmitted information to Satz in defiance of court orders and suppressed unspecified evidence. As discussed *infra,* the RICO cause of action is insufficiently pled despite these allegations. Further allegations regarding the MacFar-

demurrer on the grounds of this privilege as to the 1st ("Breach of a Rule of Law"), 7th ("Intentional Infliction of Emotional Distress"), 8th ("Defamation"), 10th ("Invasion of Privacy"), 11th ("Battery"), 12th ("Interference with Prospective Advantage") and 13th ("Negligent Infliction of Emotional Distress") causes of action. It is clear that all of these causes of action, except the 11th cause of action (battery), are based upon activities protected by section 11172 and, therefore, no liability could attach to these defendants on any of the claims theories set forth therein.

Plaintiffs' 11th cause of action for battery would be the only cause of action that could survive, since it is clearly based on activities which are outside the scope of the privilege of Penal Code section 11172.[6] However, at oral argument, before this court, plaintiffs indicated that they have abandoned this theory of recovery and have, since filing the instant appeal, withdrawn this cause of action from subsequently filed amended complaints. For these reasons this court will not issue its order preserving the 11th cause of action.

### 2. *Waiver of Immunity*

Although plaintiffs claim that defendants waived the privilege of Penal Code section 11172 in an interview on the television program "60 Minutes," upon examination of the transcript provided us, we find no such waiver in the comments made in the interview.[7] Plaintiffs fail to specify in which part of the interview the waiver occurred, merely referring to the entire transcript of the program. The only instance in which the waiver could have arguably been made consisted of the following statements between the program's moderator, Mike Wallace, and Ms. Emmons, apparently the executive director of CII, but not a named defendant:

"WALLACE: But as far as your procedures were concerned, as far as the information that you've gotten on these videotapes, you have no doubt that it's good, accurate information and will stand up in court and should stand up in court?

"Ms. EMMONS: Mike, the procedures that we used were designed to provide treatment to the children that came here. They were not designed for a court of law."

---

lane-Satz relationship are contained in paragraph 49 of the first amended complaint, which is only directed towards establishing a cause of action against ABC Television and Satz, not CII or MacFarlane.

[6] Plaintiffs claim that: "Beginning in 1984 and continuing periodically thereafter up to dismissal in 1986 of the criminal charges against Plaintiff, Plaintiff was pushed, shoved, kicked and also hit and tripped by agents and employees of Defendants and persons under Defendants' control from who Defendants had a duty to protect Plaintiff while Plaintiff was in Defendants' custody and control but failed to do so."

[7] The alleged waiver was not mentioned in plaintiffs' first amended complaint at all, but was raised in their opposition to CII's and MacFarlane's demurrer.

All that these statements indicate is that the treatment given to the children at CII was without regard to whether charges would be brought against plaintiffs. The reporting laws clearly contemplate that child care organizations such as CII would become aware of potential child abuse in the normal course of business. (*Krikorian v. Barry, supra,* 196 Cal.App.3d at p. 1223.) The subsequent reporting of these activities becomes protected whether or not the discovery was made in anticipation of prosecution of child abuse charges.

### 3. *Declaratory Relief*

Plaintiffs' fourth cause of action for "Declaratory Relief—Comparative Equitable Indemnity" seeks a declaration of defendants' rights and liabilities with respect to damages plaintiffs may be required to pay in the civil lawsuits brought by parents and/or legal guardians of former students of the McMartin Preschool. ■ Plaintiffs contend that despite the immunity from damages afforded to CII and MacFarlane, plaintiffs may still obtain a declaration of their liability.

Plaintiffs seek contribution for the monetary damages which they may be ordered to pay. We fail to see, however, given the immunity granted by Penal Code section 11172, how such statutory law can be faithfully applied were the court able to declare defendants liable for monetary damages in circumstances where actual liability for the conduct alleged could not be enforced.

Here, all the first amended complaint alleges is that "Defendants are primarily liable because of their active and intentional misconduct which was the proximate cause of such damages through the purported child abuse investigation, and the publicity attendant thereto which was staged, created and manipulated by the ABC Defendants." Plaintiffs offer no facts which elaborate, specify or provide a basis for their claims that defendants could now be held liable for activity other than that statutorily mandated by Penal Code section 11166. Under the facts alleged here, defendants are immune from civil liability under the state law theories set forth, excluding the now withdrawn claim for battery. Plaintiffs, therefore, cannot be afforded the opportunity of attempting to recover against these defendants through the "back door" of equitable indemnity for damages proven to have been suffered by third persons for which plaintiffs are found responsible.

Plaintiffs argue that *Lezama v. Justice Court* (1987) 190 Cal.App.3d 15 [235 Cal.Rptr. 238] and *Pulliam v. Allen* (1984) 466 U.S. 522 [80 L.Ed.2d 565, 104 S.Ct. 1970] provide that declaratory relief is still available despite the existence of a statute providing immunity from damages. Their reading of these cases is overly broad. Both *Lezama* and *Pulliam* dealt with the

narrow issue of the availability of the remedies of prospective injunctive relief and attorney fee awards against judicial officers and are not appropriate precedent for the matter in issue here.

## II

Having thus decided that plaintiffs are barred from relief on their first, fourth, seventh, eighth, tenth, twelfth, and thirteenth causes of action by the absolute privilege of Penal Code section 11172, we must now consider the propriety of the trial court's ruling sustaining the demurrer to the remaining causes of action asserted against these defendants (*Franchise Tax Board* v. *Firestone Tire & Rubber Co.* (1978) 87 Cal.App.3d 878, 883 [151 Cal.Rptr. 460]; *Carney* v. *Rotkin, Schmerin & McIntyre* (1988) 206 Cal.App.3d 1513, 1524 [254 Cal.Rptr. 478]), especially since the trial court's minute order indicated only that the demurrer was sustained "on the grounds set forth in the demurring papers. . . ."

### 1. *Civil Rights Violations*

In their second cause of action, plaintiffs plead a violation of 42 United States Code section 1983.[8] Their primary allegation consists of the following: "Specifically, Plaintiff alleges that . . . each of the Defendants, acted under color of state law, as a matter of governmental policy of CITY and COUNTY, recklessly and in a gross and negligent manner, and with deliberate indifference towards Plaintiff's rights, privileges, and immunities, and filed [*sic*] to protect Plaintiff with procedural due process, inflicted cruel and unusual punishment upon Plaintiff while in Defendants' custody and control and failed to follow Defendants' own statutory and regulatory requirements designed to protect plaintiff as required by law and as comparable to that which Defendants made available to other similarly situated persons within Defendants' jurisdiction."

■ Child services social workers are entitled to absolute immunity in performing quasi-prosecutorial functions such as initiating and pursuing dependency petitions in cases of suspected child abuse or neglect. (*Meyers* v. *Contra Costa County Dept. of Soc. Serv.* (9th Cir. 1987) 812 F.2d 1154, 1157, cert. denied 484 U.S. 829 [98 L.Ed.2d 59, 108 S.Ct.98] (1987).) "Although child services workers do not initiate criminal proceedings, their responsibility for bringing dependency proceedings, and their responsibility to exercise independent judgment in determining when to bring such proceedings, is not very different from the the responsibility of a criminal prosecutor. The social worker must make a quick decision based on perhaps

---

[8] 42 United States Code section 1983 provides that "Every person" who, under color of state law or custom, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured . . . ."

incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children. The social worker's independence, like that of a prosecutor, would be compromised were the social worker constantly in fear that a mistake could result in a time-consuming and financially devastating civil suit." (*Id.* at p. 1157.)

■ Defendants' activities in interviewing and observing the children and reporting their observations to the authorities were, likewise, quasi-prosecutorial functions within the scope of their authority and were required by state law. (*Schlegel* v. *Bebout* (9th Cir. 1988) 841 F.2d 937, 943-944; cf. *Coverdell* v. *Dept. of Social & Health Services* (9th Cir. 1987) 834 F.2d 758, 764.) Thus, they are entitled to immunity from claims made under 42 United States Code section 1983. (*Ibid.*)

Plaintiffs contend this absolute prosecutorial immunity does not apply because (1) defendants were acting pursuant to their employment by the police department, not the district attorney's office; (2) plaintiffs can amend to show acts which occurred before and after the prosecutorial activity which caused the harms; and (3) MacFarlane's relationship with Satz does not fall within the ambit of prosecutorial activity.

As defendants point out, however, the complaint alleges only that defendants' role in contributing to the injury complained of was their advice to the district attorney that criminal charges should be brought. Moreover, plaintiffs have failed to demonstrate, by proposed amendments to their pleadings, their briefs or in oral argument, that other facts or circumstances exist, either prior to or after the defendants' alleged prosecutorial conduct, that would deny defendants the protection of the immunity provided for such legally sanctioned activity (cf. *Coverdell* v. *Dept. of Social & Health Services, supra,* 834 F.2d at p. 762, fn. 3); nor are there any facts alleged to show that MacFarlane's relationship with Satz was "under color of state law" so as to render her liable under 42 United States Code section 1983.

2. *Conspiracy*

Plaintiffs' third cause of action for "Conspiracy to Violate Civil Rights" alleges that defendants "agreed and conspired to associate for the purposes of violating Plaintiff's [*sic*] civil rights under the laws and Constitutions of the State of California and the United States by whatever means, whether legal or illegal, available to the Defendants."

■ Plaintiffs maintain that this cause of action is a "state civil conspiracy claim," but that "the wrongful act alleged happens to be a federal civil rights violation."

Plaintiffs also contend that they could amend the first amended complaint to allege "a violation of similar state civil rights laws, e.g. the constitutional right to privacy." No such request was made at the hearing on defendants' demurrer, and no facts have been offered which would support these allegations.

As discussed herein, the complaint, even with the offered "amendments," will not support either the state law claims pled or the federal civil rights claim under 42 United States Code section 1983. ■ A conspiracy cannot be alleged as a tort separate from the underlying wrong it is organized to achieve. (*Citizens Capital Corp.* v. *Spohn* (1982) 133 Cal.App.3d 887, 889 [184 Cal.Rptr. 269].) ■ As long as the underlying wrongs are subject to privilege, defendants cannot be held liable for a conspiracy to commit those wrongs. Acting in concert with others does not destroy the immunity of defendants. (*Hardy* v. *Vial* (1957) 48 Cal.2d 577, 583-584 [311 P.2d 494, 66 A.L.R.2d 739]; see *Krikorian* v. *Barry, supra,* 196 Cal.App.3d at p. 1214.)

3. *RICO*

The trial court sustained the demurrer to plaintiffs' fifth cause of action for violation of 18 United States Code section 1961 et seq. (RICO) for its failure to adequately plead the elements of "pattern," "enterprise," and "racketeering activity."[9]

■ The RICO statutes require that a plaintiff plead and prove: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. (*Sedima, S.P.R.L.* v. *Imrex Co.* (1985) 473 U.S. 479, 496 [87 L.Ed.2d 346, 358-359, 105 S.Ct. 3275].) State courts have concurrent jurisdiction with federal courts over these claims. (*Cianci* v. *Superior Court* (1985) 40 Cal.3d 903, 909 [221 Cal.Rptr. 575, 710 P.2d 375].)

"Racketeering activity" is defined in 18 United States Code section 1961 as any of a number of specifically enumerated acts. ■ The "racketeering activity" which plaintiffs allege as the basis for their RICO claims is "the obstruction of justice." Title 18 United States Code section 1503, the obstruction of justice statute specifically referred to in the section 1961 definition of racketeering activity, pertains, however, only to federal actions. (*United States* v. *Baker* (6th Cir. 1984) 494 F.2d 1262, 1265.) Since the acts alleged by plaintiffs relate only to a state criminal prosecution, section 1503 does not apply. Because there is no other activity alleged which constitutes

---

[9] In their demurrer, CII and MacFarlane simply referred to the trial court's prior ruling sustaining a demurrer by codefendants ABC Television Inc. and Wayne Satz on the same cause of action. As noted earlier, the trial court's minute order on the CII and MacFarlane demurrer stated only that the motion was granted on the grounds set forth in the moving papers.

racketeering activity under section 1961, plaintiffs' RICO cause of action is deficient.

Plaintiffs argue in their opening brief that leave to amend should have been granted, especially in light of *Unocal Corp.* v. *Superior Court* (Cal.App.), a now depublished opinion.[10] Plaintiffs maintain that they propose to further amend their complaint by alleging instances of mail fraud, "e.g. there was a mailing with regard to appellants and CII's activities sent out by the Manhattan Beach Police Department before there was a prosecution; and there were subsequent uses of the mail to establish arguably fraudulent claims, at CII's instigation, for compensation from the state for the alleged victims of appellants' alleged child abuse."

 In pleading a violation of the mail fraud statute (18 U.S.C. § 1341) as a predicate act under a RICO scheme, plaintiffs must allege that (1) defendants devised a scheme or artifice to defraud, (2) defendants used the mails in furtherance of the scheme, and (3) defendants did so with the specific intent to deceive or defraud. (*Sun Sav. and Loan Ass'n.* v. *Dierdorff* (9th Cir. 1987) 825 F.2d 187, 195.) The first amendment proposed by defendants to their RICO cause of action clearly involves an act by the Manhattan Beach Police Department and does not meet any of the necessary criteria of mail fraud. The second proposed amendment seems to suggest that CII encouraged parents to use the mails in making claims for compensation from the state for the abuse allegedly suffered by their children. Besides failing to meet the requirement of pleading specific intent, this claim states no resultant damage to plaintiffs and at most suggests, as defendants point out, a fraud upon the State of California, a wrong which plaintiffs have no standing to prosecute. (*Sedima, S.P.R.L.* v. *Imrex, supra,* 473 U.S. at pp. 496-497 [87 L.Ed.2d at p. 359] [Under 18 United States Code section 1962(c) "a plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."]; *Old Time Enterprises* v. *Intern. Coffee Corp.* (5th Cir. 1989) 862 F.2d 1213, 1219 [Complaint dismissed for failure to allege facts showing the requisite nexus between the claimed RICO violations and plaintiffs' damages.])

Further compounding the problems with plaintiffs' RICO cause of action is their failure to specifically plead the time, place or nature of the alleged communications constituting racketeering activity. (*Alan Neuman Productions Inc.* v. *Albright* (9th Cir. 1988) 862 F.2d 1388, 1392.) No effort was made by plaintiffs to allege any specific facts in this regard. We find the trial

---

[10] The opinion (B028838) was decertified for publication on June 2, 1988, after the opening brief had been filed; however, no references were made to the RICO cause of action at all in plaintiffs' reply brief, filed August 8, 1988.

court properly sustained defendants' demurrer without leave to amend as to this cause of action.

## III

■ Plaintiffs claim that whatever the deficiencies in their first amended complaint, they should have been allowed leave to amend.

On appeal of an order sustaining a demurrer, the burden is on the plaintiff to show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading. (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].) No proposed amendment to this action was offered in plaintiffs' opposition to the demurrer of CII and MacFarlane. At the hearing of this matter, plaintiffs' counsel indicated that if allowed to amend, he would add allegations that defendant MacFarlane was not licensed as a child care professional, purportedly to demonstrate that the type of activity and conduct undertaken by CII and MacFarlane was outside the scope of the privilege. As we have indicated, this fact would not have cured the many deficiencies in the first amended complaint. In addition, even the amendments proposed in their briefs are merely conclusory and not supported by any factual allegations.

We affirm the granting of the demurrer without leave to amend as to all causes of action especially since plaintiffs made no offer in their briefs to allege facts establishing any of the other elements which we have deemed essential to their causes of action and neither the record nor the tenor of their briefs or oral argument indicates any ability on their part to plead or prove any such facts. (*Goodman* v. *Kennedy, supra,* 18 Cal.3d 335, 350.)

## DISPOSITION

The judgment (order of dismissal) is affirmed. The parties are to bear their own costs on appeal.

Lucas, P. J., and Ashby, J., concurred.

Appellants' petition for review by the Supreme Court was denied November 1, 1989.