Filed 10/13/15  Benevolent Enterprises v. Bank of America CA 2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| BENEVOLENT ENTERPRISES, et al., | B258574 |
| Plaintiffs and Appellants, | (Los Angeles County |
| v. | Super. Ct. No. PC054793) |
| BANK OF AMERICA, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Melvin D. Sandvig, Judge.  Affirmed.

Law Offices of Levi R. Uku and Levi R. Uku for Plaintiffs and Appellants.

Severson & Werson, Jan T. Chilton and Kerry W. Franich for Defendant and Respondent Bank of America.

Starre & Cohn and Gary A. Starre for Defendant and Respondent Sovereign Ventures.

_____

After Ali Lashkari defaulted on a loan secured by real property, Bank of America (his lender) foreclosed on the property and transferred it to Sovereign Ventures at a trustee's sale.  Shortly after the trustee's sale, Lashkari and Benevolent Enterprises filed a complaint alleging Bank of America had breached a contract authorizing Lashkari to conduct a "short sale" of the property to Benevolent Enterprises.  The complaint also alleged Sovereign Ventures had tortiously interfered with the contract by inducing Bank of America to foreclose on the property.  The trial court sustained defendants' demurrers without leave to amend, concluding that plaintiffs had failed to allege facts demonstrating the existence of an enforceable agreement requiring Bank of America to approve the sale of the property from Lashkari to Benevolent.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  Summary of the Complaint

Ali Lashkari and Benevolent Enterprises ("Benevolent") brought suit following the transfer of real property through a foreclosure sale.  In their operative second amended complaint, plaintiffs alleged that Lashkari had financed the purchase of a condominium from Countrywide Home Loan by obtaining an adjustable rate loan, secured by a deed of trust on the property.  Bank of America subsequently became the lender through its purchase of Countrywide.  Lashkari defaulted on the loan.

Bank of America informed Lashkari that, as an alternative to foreclosure, it was willing to consider a "short sale" of the property.  Under Bank of America's proposal, Lashkari was to identify and negotiate with a third-party buyer, and then submit the sale offer for Bank of America's review and approval through an online system.  Any offer Lashkari submitted was required to list the purchase price, the closing date of escrow, the party responsible for paying each closing cost and the net proceeds Bank of America would receive.

Lashkari identified Benevolent as a potential third-party buyer.  After they had agreed on the terms of a sale, Lashkari uploaded the offer for Bank of America's review.  Plaintiffs alleged that, after submitting the offer, Bank of America provided a

2

counteroffer through the online system that reassigned certain closing costs from Lashkari to Benevolent. Plaintiffs' complaint attached a screenshot of Bank of America's counteroffer, which contained the following language: "If you accept this counter offer, we will then present this offer to the investors. PLEASE NOTE: Your acceptance of the counter offer terms does not mean the transaction has final approval. The investor(s) . . . may respond with additional price adjustments or other stipulations." Plaintiffs allege they accepted the counteroffer. [1] Shortly thereafter, however, Bank of America withdrew the counteroffer, initiated foreclosure proceedings and then sold the property to Sovereign Ventures at a trustee's sale.

Plaintiffs' second amended complaint alleged nine causes of action arising from Bank of America's withdrawal of its counteroffer and subsequent foreclosure: (1) breach of contract; (2) tortious interference with prospective economic advantage (alleged by Benevolent against Sovereign Ventures only); (3) civil conspiracy; (4) quiet title; (5) constructive trust; (6) breach of oral contract; (7) promissory estoppel; (8) wrongful foreclosure; and (9) fraud. The first five causes of action had appeared in prior versions of the complaint to which demurrers had been sustained with leave to amend. The last four claims were alleged for the first time in the second amended complaint; no request for leave to amend was made by plaintiffs.

In their breach of contract claim, plaintiffs alleged that their acceptance of Bank of America's counteroffer established a binding agreement requiring Bank of America to accept the sale from Lashkari to Benevolent. Plaintiffs alleged Bank of America breached this agreement by refusing to "approve the short sale, accept the purchase price … and convey [the] subject real property to plaintiff Benevolent Enterprises." Plaintiffs asserted that their damages included "loss of title and escrow expenses, expenses in preparing to enter the property, the difference in price agreed upon and value of property at time of breach" and damage to Lashkari's credit rating.

---

[1] As explained below, subsequent documentation indicated no final counteroffer was made by Bank of America.

Plaintiffs' causes of action for constructive trust, promissory estoppel, breach of oral contract, fraud, quiet title, and wrongful foreclosure were also predicated on Bank of America's decision to disregard its counteroffer and proceed with the foreclosure sale. The tortious interference claim asserted that Sovereign "knew of the[] relationships and the agreement" between Benevolent, Lashkari and Bank of America, and had engaged in intentional conduct "designed to disrupt the economic relationships," which resulted in "Bank of America refus[ing] to perform its duties and obligation to approve the short sale." Plaintiffs' civil conspiracy claim contained similar allegations, asserting that Bank of America and Sovereign had conspired to breach the short sale agreement and transfer the property to Sovereign.

### B. Summary of Defendants' Demurrers

Bank of America and Sovereign Ventures each filed a demurrer to the second amended complaint. On the breach of contract claim, Bank of America argued that the documents plaintiffs had attached to their complaint demonstrated that Lashkari's acceptance of Bank of America's counteroffer had not created a binding contract for the sale of the property to Benevolent. In support, Bank of America cited language from the "screenshot" of the counteroffer stating that "acceptance of the counter offer terms does not mean the transaction has final approval" and that "investors may respond with additional price adjustments or other stipulations."[2] Bank of America argued this language demonstrated the parties had not yet reached a final sales agreement because the offer was still subject to review and approval by the investors. Additionally, Bank of America contended that Benevolent, the prospective buyer, could not pursue a breach of contract claim because it had not demonstrated it was a party to the contract or that it otherwise had any ownership interest in the property.

Sovereign Ventures argued Benevolent had failed to state a claim for tortious interference because the complaint did not include any factual allegations describing how

---

[2] The parties have not described the specific identity of the third-party investors.

4

it had interfered with the transaction between Lashkari and Bank of America. According to Sovereign, the complaint contained nothing more than conclusory statements alleging it had "colluded, conspired and agreed with defendant Bank of America to deprive plaintiffs of the benefit of the bargain."

Both defendants also argued there was no basis for a quiet title or constructive trust action because the complaint demonstrated there was never an enforceable agreement for the sale of the property to Benevolent. Defendants argued the trial court should dismiss the remaining four claims—breach of oral contract, promissory estoppel, wrongful foreclosure and fraud—because plaintiffs failed to obtain the court's permission to add the claims to their second amended complaint.

### C. The Trial Court's Ruling Sustaining the Demurrers Without Leave to Amend

The trial court sustained the demurrers without leave to amend. On the breach of contract claim, the court concluded that the "screenshot" document plaintiffs had attached to the complaint demonstrated that their acceptance of Bank of America's counteroffer had not resulted in a binding agreement to sell the property. The court also held that the lack of an agreement to sell the property defeated plaintiffs' claims for quiet title and constructive trust, explaining that both causes of action were "based on the contention that there was a contract between Plaintiffs and Bank of America."

The court found that Benevolent had failed to state claims for tortious interference with prospective economic advantage or civil conspiracy because the complaint alleged no facts demonstrating how Sovereign had interfered with Benevolent's economic relationships. Finally, the court dismissed the four newly-added causes of action for breach of oral contract, promissory estoppel, wrongful foreclosure and fraud, concluding "there [wa]s no evidence that the Court granted the Plaintiffs leave to add these new/additional causes of action."

## DISCUSSION

### A. *Standard of Review*

Plaintiffs contend the trial court erred in sustaining the defendants' demurrer to each of the nine causes of action set forth in the second amended complaint. "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] . . . . When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

While it is the plaintiff's burden to show how the complaint can be amended, "such a showing need not be made in the trial court so long as it is made to the reviewing court." (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386 (*Careau*); Code Civ. Proc., § 472c, subd. (a).) To meet this burden, the plaintiff must show in what manner the pleading can be amended and how such amendments will change the legal effect of the pleading. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349; *Careau, supra*, 222 Cal.App.3d at p. 1388.) Plaintiff must set forth factual allegations that sufficiently state all required elements of a cause of action. (*McMartin v. Children's Institute International* (1989) 212 Cal.App.3d 1393, 1408 (*McMartin*).) Those allegations must be factual and specific, not vague or conclusory. (*Cooper v. Equity Gen. Insurance* (1990) 219 Cal.App.3d 1252, 1263-1264.)

### B. *Plaintiffs Failed to State a Claim for Breach of Contract*

On appeal, plaintiffs do not re-assert that the parties entered into an enforceable agreement requiring Bank of America to approve the short sale and convey the property to Benevolent.[3]  Rather, plaintiffs now contend the documents demonstrate that Bank of America was required to present the short sale offer to the investors, and that Bank of America breached this agreement by rejecting the counteroffer itself, rather than conveying changes from the investors.  Although not explicitly stated in their appellate brief, plaintiffs appear to argue they can cure their breach of contract claim through amendment by alleging that: (1) their acceptance of Bank of America's counteroffer created a contract requiring Bank of America to present the offer to the investors; and (2) Bank of America then breached this agreement by unilaterally denying the short sale.

Plaintiffs have not provided any factual allegations supporting their contention that Bank of America failed to perform their contractual duties to present the counteroffer to investors for review.  Instead, plaintiffs appear to presume that Bank of America's rejection of the counteroffer on the online system occurred without guidance from investors.  In addition, plaintiffs' new theory is inconsistent with their prior pleadings, which included an exhibit indicating that, on February 18, 2013, after the plaintiffs' alleged acceptance, Bank of America notified them the short sale was still under analysis based on a recently completed valuation of the property; that exhibit also stated that no offer would be sent to the investors for their decision until Bank of America and plaintiffs had reached agreement on the offer.  Plaintiffs do not assert that they came to any agreement with Bank of America after February 18, 2013.  Thus, contrary to what they now allege, the documents plaintiffs submitted with their prior pleadings demonstrate that Bank of America did not agree to present the offer to the investors until both sides had agreed to its terms, which never occurred.  (See *Falcon v. Long Beach Genetics* (2014)

---

[3]  Plaintiffs' opening appellate brief specifically acknowledges that "the terms of the agreement make it clear that acceptance of [the] counter offer was not the final approval [of] the proposed short sale."

224 Cal.App.4th 1263, 1281 ["court may disregard amendments that omit harmful allegations in the original complaint or add allegations inconsistent with it"].)

In addition, despite identifying new contractual duties in their opening brief, plaintiffs do not provide a revised description of resulting damages. (See *Lortz v. Connell* (1969) 273 Cal.App.2d 286, 290 [damages are an essential element to be pleaded in an action for breach of contract].) The second amended complaint identified various damages resulting from Bank of America's refusal to approve the sale set forth in the counteroffer, including: Benevolent's expected profits from the purchase of the property, damage to Lashkari's credit that allegedly resulted from the property's foreclosure and various fees Lashkari and Benevolent incurred to facilitate the completion of the sale. All of those damages rest on an approved sale; none reflect the new allegations of a contingent approval.

When attempting to show how a complaint can be amended, the plaintiff must present specific factual allegations that sufficiently state all required elements of a cause of action. (*McMartin, supra,* 212 Cal.App.3d at p. 1408.) In this case, plaintiffs have not demonstrated that they could, in good faith, allege facts sufficient to support their new contract theory. They have therefore failed to demonstrate a reasonable possibility that they can amend the complaint to state a viable breach of contract claim.

### C. Benevolent Failed to State a Claim for Tortious Interference with Prospective Economic Advantage

Benevolent alleges Sovereign's wrongful acts disrupted economic relationships between itself and Bank of America, as well as its economic relationship with plaintiff Lashkari. To plead the tort of interference with prospective economic advantage, a plaintiff must allege, among other things, that the defendant's interfering conduct was independently wrongful. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153; *National Medical Transportation Network v. Deloitte & Touche* (1998) 62 Cal.App.4th 412, 440.) Benevolent has not alleged any facts demonstrating that Sovereign engaged in independently wrongful conduct designed to interfere with the

8

short sale of the real property. Instead, the operative pleading alleges only that Sovereign engaged in "conduct" that was "designed to disrupt the economic relationships between [Benevolent] and [Lashkari] one [sic] the one hand and between the plaintiff and Bank of America on the other." This conclusory statement, which alleges no facts demonstrating that Sovereign's conduct was wrongful by a legal measure other than the interference itself, is insufficient to state a claim for tortious interference.

### D. Plaintiffs Cannot Recover for Civil Conspiracy

Plaintiffs attempt to allege, as an independent cause of action, that Sovereign Ventures engaged in a conspiracy by colluding with Bank of America to breach the short sale agreement, foreclose on the property and convey the property to Sovereign at a trustee's sale. However, "[c]onspiracy is not a cause of action but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." (*Applied Equipment Corp. v. Litton Saudi Arabia, Ltd.* (1994) 7 Cal.4th 503, 511.) Plaintiffs are unable to recover through a civil conspiracy claim because they have failed to sufficiently plead any tortious interference. Without sufficiently alleging an underlying civil wrong, plaintiffs cannot recover on an allegation that defendants worked together to perpetrate that civil wrong. Additionally, plaintiffs cannot recover on the basis of a conspiracy to breach or interfere with a finalized short sale agreement because they have conceded that the contract had never been formed.

### E. Plaintiffs Failed to State Claims for Quiet Title and Constructive Trust

Plaintiffs argue that the trial court erred in sustaining the demurrer to the second amended complaint because their quiet title and constructive trust causes of action were adequately pleaded. Through these causes of action, plaintiffs seek to set aside the trustee's sale that transferred the real property to Sovereign Ventures by establishing that Benevolent had previously been granted ownership of the property. Despite their new theory of the contract, plaintiffs continue to allege that Benevolent is the rightful owner of the property because absent Bank of America's breach of the short sale agreement, the

9

property would have been transferred to Benevolent. However, plaintiffs' appellate brief specifically concedes that Lashkari's acceptance of Bank of America's "counteroffer" did not create an enforceable agreement requiring the sale of the property to Benevolent, stating: "acceptance of [the] counter offer was not the final approval [of] the proposed short sale . . . ." Having conceded there was no contract mandating the transfer of the property to Benevolent, plaintiffs are unable to obtain relief based on any theory that Benevolent is the legal owner of the real property.

### F. *Plaintiffs Did Not Properly Seek Leave to Amend or State Claims for the Newly Added Causes of Action*

The trial court sustained defendants' demurrers to four new causes of action included for the first time in the second amended complaint. "Following an order sustaining a demurrer . . . the plaintiff may amend his or her complaint only as authorized by the court's order. [Citation.] The plaintiff may not amend the complaint to add a new cause of action without having obtained permission to do so, unless the new cause of action is within the scope of the order granting leave to amend." (*Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1023.) Plaintiffs have not pointed to any portion of the record demonstrating that they sought permission to add new causes of action after the court sustained the demurrer to the first amended complaint, that the court granted such permission or that the causes of action they added to the second amended complaint were within the scope of the order granting leave to amend. The trial court did not abuse its discretion in sustaining the demurrer to these causes of action.

**DISPOSITION**

The judgment is affirmed.  Respondents are awarded their costs on appeal.


ZELON, J.


We concur:


PERLUSS, P. J.


SEGAL, J.

11