Filed 8/25/14  Chalal v. Syprasert CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SUKHA SINGH CHAHAL et al., Plaintiffs and Appellants, v. ARICH SYPRASERT et al., Defendants and Respondents. | F066992 (Super. Ct. No. VCU247413) **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Lloyd L. Hicks, Judge.

Law Offices of William L. Cowin, William L. Cowin and Cathleen A. Cowin for Plaintiffs and Appellants.

Sullivan & Sullivan, Ryan P. Sullivan and Josh T. Fox for Defendants and Respondents Arich and Boualiene Syprasert.

Ward R. Stringham and Zachary W. Stringham for Defendants and Respondents Balwant Singh Dhaliwal, Baljinder Kaur Dhaliwal and BBP Market, Inc.

-ooOoo-

Sukha Singh Chahal and Satvir Kaur (collectively the Chahals) leased property from Arich and Boualiene Syprasert (collectively the Sypraserts) to operate a

convenience store business they were buying from the former tenant. At that time, the Sypraserts allegedly told the Chahals that they would sell the property to them if they ever decided to sell. Thereafter the Chahals invested a significant amount of money into the business and improvements to the property. Three years later, the Sypraserts decided to sell the property and offered it the Chahals. Negotiations ensued; eventually the parties orally agreed to a price and the Sypraserts opened an escrow, but they never signed a purchase agreement or escrow instructions. Before the escrow closed, the Sypraserts sold the property to a third party, BBP Market, Inc., which is owned by Balwant Singh Dhaliwal and Baljinder Kaur Dhaliwal (collectively the Dhaliwals).

The Chahals sued the Sypraserts and Dhaliwals alleging five causes of action based essentially on breach of contract and fraud. The Sypraserts and Dhaliwals demurred to the complaint, contending the claims were uncertain and failed to state facts sufficient to constitute causes of action. The trial court sustained the demurrers with leave to amend. After the Chahals filed a first amended complaint (FAC) which included 17 causes of action, the Sypraserts and Dhaliwals again demurred. The trial court agreed no causes of action were stated, primarily because the contracts upon which the claims were based were unenforceable as they were uncertain and violated the statute of frauds. After giving the Chahals an opportunity to show how they could remedy the FAC's defects, the trial court sustained the demurrers without leave to amend.

On appeal, the Chahals contend their claims are adequately stated and, if not, they should be given leave to amend. We disagree and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On appeal from a judgment of dismissal after a demurrer is sustained without leave to amend, we assume the truth of all facts properly pleaded in order to determine whether a cause of action is stated. (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814; *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 579.) Facts appearing in exhibits attached to the complaint are also accepted as true and given

2.

precedence over inconsistent allegations in the complaint. (*Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 505; *Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1447.) We do not assume the truth of contentions, deductions or conclusions of fact or law. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 (*Moore*).) In accordance with these rules, we recite the facts as taken from the FAC.

In January 2008, the Chahals learned that a convenience store business in Visalia, called Som's Market, was for sale. The Chahals met with the business's owner, Mr. Somcast, who told them he was closing the business, which generated income of only about $50 per day and had inventory of less than $2,000. He showed them the lease space, which was in a "terrible, run down condition." The business had no coolers, but did have a cash register and some shelving that was in poor condition. After the Chahals expressed an interest in the business, Somcast met with the building's owners, the Sypraserts, who provided Somcast with a proposed monthly property lease form.

The Chahals do not speak, read or write English very well, so they reviewed the proposed lease with family and friends. Somcast was informed that the lease was unacceptable to the Chahals for a number of reasons, including that a month-to-month lease made no business sense since the business required significant improvements, the lease would need to be for at least 15 years comprised of three sets of five-year intervals, and the Chahals should have the right to purchase the property if the Sypraserts were going to sell it in the future. Somcast relayed these concerns to the Sypraserts. Arich Syprasert and Somcast met with the Chahals and presented a revised lease, which changed the lease to three five-year renewable terms, with a monthly rental increase at the end of each five year term. The Chahals signed the lease only after "various further promises" to protect their "planned investment of substantial funds and time." Specifically, the Sypraserts promised the Chahals that if they "would purchase the Som's Market business from Mr. Somcast, make the required improvements, and develop a

3.

viable business and then later, if the Syprasert defendants decided in the future to sell the property, the Syprasert defendants would sell the property to the Plaintiffs." The first five-year term began on March 1, 2008, and was to end on February 28, 2013.

"Based on the written agreement, the promises and the verbal agreements of the Syprasert defendants and the modified written lease contract," the Chahals purchased the business, goodwill, liquor license, personal property, cash register and shelving from Somcast for approximately $15,000. Immediately after escrow closed, the Chahals "invested huge and substantial sums of their money and their time into making long term improvements to the property," including installing an eight-door walk-in cooler, new tile flooring, new counters and shelving, an office, camera surveillance systems, and bathrooms. The Chahals invested nearly $100,000 in improvements and increased the business income from $1,500 per month to over $60,000 per month.

In October 2011, the Sypraserts told the Chahals they were thinking of selling the property and asked if they wanted to purchase it; the Chahals said they did. Negotiations ensued; Arich would stop by the store to discuss the purchase price and terms with the Chahals, who usually had family members and friends function as interpreters in negotiations. At first, the parties could not agree on the price, with the Sypraserts asking for $300,000 and the Chahals offering $250,000. The Sypraserts' lender, Mid Valley Financial Services, Inc., held a first trust deed on the property. In January 2012,[1] the parties agreed to split the different in price and the Sypraserts agreed to sell the property to the Chahals for $270,000. Arich told the Chahals, "'We have a deal and I will get an escrow opened and make arrangements with Mid Valley.'"

The Sypraserts opened an escrow with First American Title Company and "made a deal with Mid Valley to allow [the Chahals] to assume financing of $235,000 plus cash to the purchase price for the property." This would require the Chahals to advance a

_____

[1] Subsequent references to dates are to dates in 2012, unless otherwise stated.

$35,000 cash down payment. Immediately after escrow opened, the Chahals signed an authorization allowing First American Title to discuss the escrow and the Chahals' business with Mid Valley. The Sypraserts provided the Chahals with a copy of a March 2009 lease with the owner of a Chinese food restaurant located on the property the Chahals were purchasing.

In April, the escrow was ready to close; only the Sypraserts' signature was required on the closing documents. Arich, however, informed First American Title, Mid Valley and the Chahals that his wife, Boualiene Syprasert, was not available to sign the closing documents because she had gone on a month long trip to India with an Indian friend. Arich asked the parties to wait until his wife's return to execute the closing documents. Unbeknownst to the Chahals, the Indian friend that accompanied Boualiene on the trip was the best friend of the wife of Balwant Singh Dhaliwal, the Chahals' business competitor. When Balwant was informed of the Chahals' pending purchase of the Sypraserts' property, he contacted Arich and negotiated a higher purchase price for the property. The Dhaliwals and Sypraserts secretly opened escrow with Chicago Title and went forward with the transaction. On May 18, a grant deed was recorded in which the Sypraserts granted the property to BBP Market, Inc. The "Document Date" on the deed is April 30, and the Sypraserts signatures were notarized on May 1. The deed reflects that Chicago Title Company handled the escrow between the Sypraserts and Dhaliwals.

On or about May 22, Arich told the Chahals that he was going to sell the property to Balwant Singh Dhaliwal and they should start paying him rent in June. While the Chahals alleged they were financially qualified by Mid Valley to assume the $235,000 financing, they signed a final set of escrow purchase instructions, dated May 23, which estimated a closing date of June 30 and required the Chahals to pay a $35,000 down payment and obtain a "First New Loan" of $235,000. The instructions state that the

5.

escrow was contingent on the buyer and property qualifying for the new loan. The Sypraserts did not sign the instructions.

On May 24, the Chahals deposited the $35,000 down payment with First American. They also completed and executed a Preliminary Change of Ownership Report. An amendment to the escrow instructions, dated May 23, required the Sypraserts to deliver a copy of their promissory note and deed of trust with Mid Valley to the Chahals and provided that Mid Valley would prepare an All-Inclusive Note and Deed of Trust, to be executed by the parties, which would "result in the existence of a creditor-debtor relationship" between the Sypraserts and Chahals respectively. The instructions further provided that First American had not obtained an assumption package, statement of condition or any other approval from Mid Valley. First American was instructed not to contact Mid Valley regarding the existing loan, and to close escrow without a formal assumption or consent or approval from Mid Valley. None of the parties signed the amendment.

In early June, the Chahals timely paid their June rent to the Sypraserts. Arich, however, told them he no longer owned the property and the rent needed to be paid to Balwant Singh. Arich agreed to sign the rent check over to Balwant Singh and provide it to him immediately. This did not occur, and the Dhaliwals immediately commenced an unlawful detainer action against the Chahals in an effort to terminate their leasehold rights. The action failed.

*The Original Complaint*

On May 25, the Chahals filed a verified complaint against the Sypraserts and Balwant Singh. The Chahals alleged that while it appeared the Sypraserts were attempting to sell the property to Balwant, they did not know Balwant's intentions or what he knew about their purchase rights. The complaint alleged five causes of action: (1) fraud; (2) negligent misrepresentation; (3) breach of contract; (4) specific performance; and (5) request for temporary restraining orders and injunctive relief.

In the fraud claim, the Chahals alleged that from February 2008 to May 21, 2012, the Sypraserts "continually represented" to them that if and when the Sypraserts decided to sell the property, they would sell it to the Chahals if the Chahals made substantial improvements to the property and increased the business; in reliance on those representations, they purchased the business and made improvements; the representations were false, as the Sypraserts told them they intended to sell the property to a different party; and when the Sypraserts made the representations, they knew them to be false. The negligent misrepresentation claim was based on the same representations.

In the breach of contract claim, the Chahals alleged that from January 2008 to May 21, 2012, the Sypraserts "entered into both verbal and written agreements" with the Chahals. The Chahals alleged they obviously entered into the lease only because of the Sypraserts' promise to sell the property to them if they decided to sell and while the Chahals "should have been protected by a written option agreement, . . . these deficiencies and the Syprasert defendants' obvious taking advantage of the Plaintiffs by virtue of the Plaintiffs' lack of knowledge and, in effect, blind trust, is overcome by virtue of all the exceptions to the statute of frauds governing land contracts."

The Chahals further alleged that "[a]t a point in time between October, 2011 and March, 2012, the Syprasert defendants and the Plaintiffs entered into a fully enforceable purchase contract[,]" which the Chahals had fully performed and the Sypraserts had partially performed by opening escrow, dictating its terms, and making loan arrangements. The Chahals asserted the Sypraserts were in breach of the contract with them because they refused to sign the documents needed to close escrow. The Chahals asked for specific performance of the purchase contract as set forth in the various escrow documents attached to the complaint, including the final escrow sale agreement. The Chahals also asked for temporary restraining orders and injunctive relief to prevent the defendants from changing title of the property to anyone other than themselves.

The Sypraserts and Dhaliwal filed separate demurrers to the complaint. They demurred on grounds of uncertainty and failure to state facts sufficient to constitute a cause of action. They also argued the alleged contracts were unenforceable because they were barred by the statute of frauds.

In opposition to Dhaliwal's demurrer, the Chahals asserted that after they filed the complaint they learned facts that justified making additional allegations against Dhaliwal. Accordingly, they asked the trial court to overrule the demurrer and allow them to file an amended complaint. The Chahals filed a doe amendment which substituted BBP Market Inc. in place of Doe 1, and corrected the name of defendant Balwant Singh to Balwant Singh Dhaliwal.

On August 9, the trial court sustained Dhaliwal's demurrer as to all causes of action with leave to amend, giving the Chahals 10 days from service of the order to file an amended complaint. The trial court noted that while the Chahals' opposition did not address the complaint's deficiencies as asserted by Dhaliwal, they suggested there were additional facts that could be alleged to support their claims. Accordingly, the trial court determined that leave to amend was appropriate.

In their opposition to the Sypraserts' demurrer, the Chahals asserted they would be filing an amended complaint before the August 23 hearing on the Sypraserts' demurrer and asked the court to overrule the demurrer. The Chahals agreed the original complaint would benefit from clarification and an amendment would correct any alleged deficiencies as to uncertainty and the statute of frauds. With respect to the breach of contract claim, the Chahals argued they were offered a "Right of First Offer," or ROFO, "on whatever terms the business would otherwise be sold to a third party[,]" and the Sypraserts' failure to honor the ROFO after the Chahals made significant improvements represented an actionable claim. The Chahals argued the statute of frauds was not a bar to their claims because the equitable estoppel exception to the statute applied and the oral contract had been partially performed.

8.

On August 23, the trial court sustained the Sypraserts' demurrer to the complaint with leave to amend. The court ordered the Chahals to file the first amended complaint within seven days of service of the order. The court noted that although the Chahals were granted 10 days to file an amended complaint when it sustained Dhaliwal's demurrer, they had not done so. The court explained it was granting leave to amend because, while the Sypraserts had shown the complaint was uncertain and insufficient to state causes of action against them, it might be possible for the Chahals to asserts facts sufficient to state some cause of action.

*The First Amended Complaint*

The Chahals subsequently filed a First Amended Complaint (FAC) which alleged 17 causes of action labeled as follows: (1) breach of contract; (2) specific performance; (3) fraud and deceit; (4) fraud in the inducement; (5) promise without intent to perform; (6) good faith improvements; (7) misrepresentation; (8) interference with prospective business advantage; (9) interference with contact; (10) alter ego; (11) conspiracy; (12) aiding and abetting; (13) constructive trust; (14) negligence; (15) restraining orders; (16) injunctive relief; and (17) declaratory relief. Balwant Singh Dhaliwal's wife, Baljinder Kaur Dhaliwal, was added as a defendant.

The Chahals' claims can be divided essentially into the following categories: (1) contract-based claims comprised of the first and second causes of action; (2) misrepresentation claims comprised of the third, fourth, fifth, seventh and fourteenth causes of action; (3) claims of tortious interference with contract and prospective relations comprised of the eighth and ninth causes of action; (4) claims seeking to attribute liability to all defendants comprised of the tenth, eleventh and twelfth causes of

action; and (5) requests for equitable and declaratory relief, i.e. the thirteenth, fifteenth, sixteenth and seventeenth causes of action.[2]

In the contract claims, the Chahals continue to allege that the Sypraserts entered into both verbal and written agreements with them from January 2008 to May 21, 2012. They further allege the agreement between themselves and Somcast was entered into based on the Sypraserts' verbal promises and representations that if the Chahals "invested huge sums of money into the real property and the business and inventory, the [Chahal]s would be sold the property if and when the Syprasert defendants decided to sell." The Chahals add that "there was partial performance of the parties' purchase agreement by both parties, which supports an equitable estoppel against any statute of frauds issues raised" by the Sypraserts. The Chahals also continue to allege that between October 2011 and February 2012, they entered into a "fully enforceable purchase agreement" with the Sypraserts, which the Chahals had fully performed. The Chahals allege the Sypraserts' "breach of their agreements with the plaintiffs" would cause them to incur substantive past and future damages.

In the second cause of action, the Chahals ask the court to "order specific performance of the purchase agreement as set forth in the various escrow documentation," including the final escrow sale agreement. The Chahals assert the consideration set forth in that document is $270,000, with the Sypraserts receiving $270,000 in cash comprised of a $35,000 down payment from the Chahals and a $235,000 loan from Mid Valley to the Chahals.

The misrepresentation claims allege the Sypraserts falsely promised, "[c]ommencing in February, 2008 to May 21, 2012," that they would sell the property to

---

[2] The Chahals conceded the sixth cause of action for good faith improvements did not state a viable claim. They do not contend otherwise on appeal. Accordingly, we do not discuss this claim.

10.

the Chahals who, in reliance upon this promise, incurred expenses improving the property. The FAC alleges that the Sypraserts "may or may not have originally intended to keep their promise that, when they decided to sell the property they would sell it to their tenants," but based on the Sypraserts' subsequent conduct, it was "now obvious" the Sypraserts "did not intend to perform on their promise."

In the interference claims, the Chahals allege the Dhaliwals interfered with their purchase of the property by contacting the Sypraserts and offering to purchase the property at a higher price, thereby causing the Sypraserts to breach their agreements with the Chahals and refuse to close the transaction with them. In the claims seeking to impose liability, the Chahals allege (1) BBP is the Dhaliwals' alter ego, (2) all defendants participated in a civil conspiracy regarding the Chahals' right to purchase the property from the Sypraserts, and (3) all defendants "participated via aiding and abetting each other respecting the frauds, interference and breaches of agreements referenced" in the FAC. Finally, in the equitable claims the Chahals seek to (1) impose a constructive trust on the property, (2) obtain an order restraining all defendants from changing title of the property or allowing liens to be placed on the property, (3) obtain a permanent injunction incorporating the restraining order prohibitions, and (4) obtain declaratory relief to "preserve the status quo for all the parties."

*The Demurrers to the FAC*

The Sypraserts and Dhaliwals each demurred both specially and generally to the FAC on the grounds that each cause of action was uncertain and failed to state facts sufficient to constitute a cause of action. (Code Civ. Proc., §§ 430.10, subds. (f) & (e), 430.30, subd. (a).) The Dhaliwals also demurred on the grounds no cause of action was stated against them and the causes of action were unintelligible.

The Sypraserts argued the entire FAC was uncertain because it failed to specify the party against whom each cause of action is asserted. They specially demurred to the contract claims on the grounds they (1) were uncertain, since the Chahals failed to clearly

11.

allege the existence of the contract upon which their claims for relief were based, (2) were ambiguous, as the allegations regarding the alleged agreement's material terms were uncertain and contradictory, and (3) failed to state whether the alleged contract was oral, written or implied by conduct. The Sypraserts also argued the contract claims failed as a matter of law because the alleged terms of the contract were too vague to be enforceable, depended on an illusory, invalid contract, and the alleged contracts were unenforceable under the statute of frauds.

As to the misrepresentation claims, the Sypraserts argued there was no cause of action stated because (1) the alleged misrepresentation related to a future event, and (2) there is no allegation that the Sypraserts did not intend to perform their alleged promise to sell the property to the Chahals at the time the promise was made. The Sypraserts contended the civil conspiracy and aiding and abetting claims were not actionable because the Chahals failed to allege the Sypraserts committed any tortious act. Finally, the Sypraserts asserted the claims for equitable relief were not actionable because the Chahals failed to state any valid cause of action against them.

The Dhaliwals argued that the interference claims alleged against them did not state facts sufficient to constitute a cause of action because there is no allegation that their actions amounted to wrongful conduct and the alleged contracts did not satisfy the statute of frauds. They asserted the claims for alter ego, conspiracy and aiding and abetting, were theories of liability, not causes of action.

In opposition to the Sypraserts' demurrer, the Chahals asserted the breach of contract claims adequately identified the contracts upon which they are based: (1) an oral ROFO which states that the Sypraserts promised the Chahals that if they purchased the Som's Market business, made the "required improvements," and developed a "viable business[,]" and if the Sypraserts decided to sell the property in the future, they would sell it to the Chahals; and (2) a legally enforceable agreement for sale of the property at the agreed-upon purchase price of $270,000. The purchase agreement was evidenced in

12.

the written escrow purchase instructions, the Sypraserts' signed agreement allowing the Chahals to negotiate with Mid Valley, and the Chahals' signing of the final set of escrow instructions, deposit of their purchase funds and being fully prepared to close the sale.

The Chahals asserted a "ROFO is merely an agreement to negotiate[,]" and the Sypraserts' acceptance of the negotiated price ripened the ROFO into a full option. They further asserted a ROFO does not fall under the statute of frauds and, even if it does, "it has numerous exceptions, including but not limited to partial performance," which they alleged in the FAC. The Chahals urged the court not to decide the statute of frauds issue on demurrer, as they believed additional writings would be uncovered in discovery to show its satisfaction or an exception thereto.

With respect to the misrepresentation claims, the Chahals asserted (1) the ROFO is an actionable representation, (2) the Sypraserts' present lack of intent to actually honor the promise of future performance is sufficient to support their claim of fraud in the inducement, and (3) while the Sypraserts may have intended to keep the original ROFO promise when made, they made other fraudulent misrepresentations which support this claim and led them to believe the Sypraserts were going to honor the ROFO and sell the property to them. The Chahals requested leave to amend should the demurrer be sustained.

In their opposition to the Dhaliwals' demurrer, the Chahals conceded that the first seven causes of action were not alleged against them. The Chahals explained that their interference claims were based on allegations that the Dhaliwals convinced the Sypraserts to ignore the ROFO and sell the property to them, and they interfered with the ROFO as the Sypraserts had not signed the final escrow documents. The Chahals acknowledged both the alter ego and conspiracy claims do not stand on their own, but are dependent on the prior causes of action incorporated by reference.

The trial court issued a tentative ruling overruling the demurrers. Only the Sypraserts' counsel requested oral argument. At the hearing on the demurrers, the

13.

Sypraserts' counsel asked the court to decline to adopt its tentative ruling in full, while the Chahals' counsel argued the ruling was correct. After taking the matter under submission, the trial court issued a written ruling sustaining the demurrers. With respect to the contract claims, the trial court found there was no cause of action stated for any contract based on the 2008 representation that if the Sypraserts decided to sell, they would sell to the Chahals because (1) there was no allegation of a price, terms or time, and the representation was not an option, a right of first refusal or a ROFO, but at most was a promise to negotiate with the Chahals if and when they decided to sell; (2) the statement was "too vague and contingent" to be enforced as a contract; (3) the alleged contract was invalid because, to be enforceable, it must be in writing signed by the Sypraserts; and (4) the Chahals' asserted exception to the statute of frauds, namely that they spent money buying the business and making improvements in reliance on the promise, did not apply because it "would be utterly unreasonable to rely on so vague and conditional a statement" since there was no promise they would ever sell.

With respect to the second alleged oral agreement to sell the property for $270,000, the trial court found: (1) by virtue of the statute of frauds, it was not a valid, enforceable contract; and (2) the Chahals claimed exception of full performance failed because tendering money toward an oral contract to purchase real property is not the full performance needed to take a contract out of the statute of frauds, and the allegations and attached exhibits show the Chahals did not in fact tender the performance called for by them under their alleged contract. The court noted that while the sale escrow instructions state the price was $270,000, comprised of $35,000 cash from the Chahals and $235,000 from a new loan, and the FAC alleges the Chahals qualified to assume the existing loan, there is nothing in the escrow documents attached to the FAC that show they did and documents that show they did not. Specifically, the proposed amended escrow instruction, dated May 23, shows that the Chahals will take subject to the existing loan,

on which the Sypraserts would still be liable, and these instructions, as well as the $35,000 deposit, were not put in escrow until after the property was sold to Dhaliwal.

The trial court determined the interference claims could be actionable only if the interference alleged was wrongful and there is nothing wrongful about out-bidding someone for a piece of property. In addition, the court found there was no prospective economic advantage to be interfered with because the Sypraserts were under no obligation to sell to the Chahals.

With regard to the fraud claims, the court found (1) the claimed promise to sell to the Chahals related only to possible future action, and therefore was not an actionable representation, and (2) no present damages based on that promise were alleged. With respect to the claimed 2012 promise to sell for $270,000, the representation was required by the statute of frauds to be in writing and could not be evaded by labeling it a tort. The court further found there was no basis for injunctive relief because no cause of action was stated for specific performance, and no basis for declaratory relief to preserve the status quo.

The trial court found that while there was a sufficient basis to sustain the demurrer without leave to amend, it would allow the Chahals to submit a statement regarding what, if anything, they believed they could truthfully allege which would remedy the FAC's defects. The Chahals submitted a brief in which they suggested only two factual amendments: (1) the promise to sell to the Chahals, characterized as a ROFO, was limited to the lease term, and (2) the financing terms of the purported sales contract were that they could either assume the existing loan or obtain a new loan. They further asserted that while the ROFO was an oral agreement, it was not an agreement for an interest in land that is subject to the statute of frauds, and "the contract alleged to have been breached is the ROFO, which ripened into a full option contact upon acceptance of the $270,000 purchase price, which is not contested in this demurrer. The question is

15.

whether the option was substantially performed." The Chahals claimed they adequately pled substantial performance.

The trial court subsequently issued a written ruling confirming its prior ruling sustaining the demurrers without leave to amend. The trial court determined the proposed factual changes did not affect the failure of the alleged agreements to be in writing and signed by the Sypraserts. The trial court determined the ROFO was subject to the statute of frauds and therefore, even if the proposed amendment constituted a ROFO, it was unenforceable because it was not in writing and signed by the party to be charged. Noting that the entire case depended on there being at least one enforceable contract, and none of the alleged oral contracts were enforceable because they fell under the statute of frauds, the Chahals failed to show how they could amend to cure the basic defect.

## DISCUSSION

A general demurrer presents the same question to the appellate court as to the trial court, namely, whether the plaintiff has alleged sufficient facts in the complaint to justify relief on any legal theory. (*Service by Medallion, Inc. v. Clorox Co.* (1996) 44 Cal.App.4th 1807, 1811-1812.) The "complaint must be liberally construed to afford plaintiff [his or] her day in court and render substantial justice between the parties." (*Cooper v. National Railroad Passenger Corp.* (1975) 45 Cal.App.3d 389, 393, disapproved on other grounds in *Ewing v. Cloverleaf Bowl* (1978) 20 Cal.3d 389, 401, fn. 8.) A demurrer is properly granted when the pleadings fail to state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) Regardless of the label attached to the cause of action, the court must examine the complaint's factual allegations to determine whether they state a cause of action on any available legal theory. (*Wolfe v. State Farm Fire & Casualty Ins. Co.* (1996) 46 Cal.App.4th 554, 560.)

An appellate court presumes that the judgment appealed from is correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) We adopt all intendments and

16.

inferences to affirm the judgment unless the record expressly contradicts them. (See *Brewer v. Simpson* (1960) 53 Cal.2d 567, 583.) An appellant has the burden of overcoming the presumption of correctness. (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1207.) Even when the appellate court is required to conduct a de novo review, review "is limited to issues which have been adequately raised and supported in [the appellant's] brief." (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.) It is the appellant's burden to demonstrate the trial court sustained the demurrer erroneously. (*Smith v. County of Kern* (1993) 20 Cal.App.4th 1826, 1829-1830.)

The Chahals begin by requesting that we review the FAC, the briefs in support and opposition to the demurrers, and the trial court's rulings, so we may exercise our independent judgment "with a minimum of repetition of prior argument" in their opening brief. In essence, the Chahals are inviting us to examine the parties' trial court papers as a means of determining whether the trial court erred in sustaining the demurrers. It is well settled, however, that it is not appropriate to incorporate by reference into an appellate brief points and authorities contained in trial court papers, even if they are part of the appellate record. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 294, fn. 20; *Garrick Development Co. v. Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320, 334.) Instead, California Rules of Court, rule 8.204(a)(1)(B) requires that appellate briefs "support each point by argument and, if possible, citation to authority." Accordingly, we disregard the purported incorporation by reference and consider only those arguments properly raised in the Chahals' briefs.

*The Contract Claims*

"A cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." (*CDF Firefighters v. Maldonado* (2008) 158 Cal.App.4th 1226, 1239.) Specific performance is an equitable remedy available for breach of contract. (*Blackburn v. Charnley* (2004) 117

17.

Cal.App.4th 758, 766; *Golden West Baseball Co. v. City of Anaheim* (1994) 25 Cal.App.4th 11, 49; *Tamarind Lithography Workshop, Inc. v. Sanders* (1983) 143 Cal.App.3d 571, 575 (*Tamarind*).)  In addition to proving the contract has been breached, a plaintiff seeking specific performance must demonstrate that:  (1) the legal remedy is inadequate; (2) the underlying contract is reasonable and supported by adequate consideration; (3) a mutuality of remedies exists; (4) the contractual terms are sufficiently certain such that the court knows what it is to enforce; and (5) the requested performance is substantially similar to that promised in the contract.  (*Tamarind, supra,* at p. 575.)

The Chahals assert there are two contracts at issue that are alleged in the FAC: (1) an oral ROFO, and (2) a written purchase agreement.  They claim they entered into the lease based on the oral promises regarding the ROFO and they have a "legally enforceable agreement for sale of the property at the agreed-upon purchase price of $270,000" based on the ROFO and the "well-documented substantial performance."

We begin with the asserted 2008 oral ROFO, which the Chahals claim is based on the allegation in the FAC that the Sypraserts promised that if the Chahals would purchase the Som's Market business, make the "required improvements" and "develop a viable business," then if the Sypraserts later decided to sell the property, they would sell it to the Chahals.  This, however, is not a ROFO.  A ROFO is one type of preemptive purchase right by which a landowner gives the grantee the first opportunity to purchase the property if the landowner decides to sell.  (*Bill Signs Trucking, LLC v. Signs Family Limited Partnership* (2007) 157 Cal.App.4th 1515, 1522 (*Bill Signs Trucking*); Greenwald & Bank, Cal. Practice Guide: Real Property Transactions (The Rutter Group 2013) ¶'s 8:200, 8:204, pp. 8-40 – 8-41 (hereafter Greenwald & Bank).)  The other type of preemptive purchase right is a "right of first refusal."  (Greenwald & Bank, *supra*, ¶ 8:204, p. 8-41.)

The two preemptive purchase rights differ.  Under a "right of first refusal," the landowner seller first procures an offer to purchase from a third party on terms and

18.

conditions acceptable to the seller, and then presents that offer to the grantee of the right of first refusal, who has a limited period of time to either match the offer or reject it. (*Bill Signs Trucking*, *supra*, 157 Cal.App.4th 1515, 1523; Greenwald & Bank, *supra*, ¶ 8:206, p. 8-41.) Under a ROFO, the seller, upon deciding to market its property, must first make an offer to the grantee of the ROFO; if the grantee does not accept the offer, the seller is free to sell to anyone else on the terms the grantee rejected *or* on terms which are better, but not worse, for the seller. (*Bill Signs Trucking*, *supra*, 157 Cal.App.4th at p. 1523.) "'[I]n other words, no other buyer can get a better deal than that which was presented to the grantee.'" (*Ibid.*)

The advantage of using a ROFO instead of a right of first refusal "'is that once the grantee has rejected the seller's offer, the seller is free to proceed with a sale to another buyer without having to go back to the grantee (provided the sale is on terms no better than those offered to the grantee). Also, once the grantee elects not to accept the seller's offer, brokers are more willing to undertake a listing on the property. [¶] On the other hand, the seller will (at least theoretically) have to present to the grantee its "rock-bottom" price (and best terms), since the seller will not be able to accept any price lower than that offered to the grantee.'" (*Bill Signs Trucking*, *supra*, 157 Cal.App.4th at p. 1523.)

Contrary to the Chahals' assertions, the FAC did not allege terms that comprise a ROFO, as it does not state that the Sypraserts must first offer the property to the Chahals if they decided to sell, give the Chahals a time within which to accept the offer, or provide that the Sypraserts are free to sell to a third party should the Chahals fail to accept the offer. Instead, the FAC alleges that the Sypraserts promised to sell the property to the Chahals if they decided to sell. The trial court correctly found that by its stated terms, this was not an option, a right of first refusal, or a ROFO; at most, it was a promise to negotiate with the Chahals if and when the Sypraserts decided to sell.

19.

Citing to the trial court's finding, the Chahals misconstrue *Bill Signs Trucking* to claim that a ROFO can be an agreement to negotiate because a "ROFO merely obliges the owner to undergo exclusive good faith negotiations with the rights holder before negotiating with other parties." But that is not how a ROFO is defined in *Bill Signs Trucking* or explained in Greenwald & Bank. Both sources explain that a ROFO merely requires the landowner to present an offer to the right holder; if the right holder rejects the offer, the landowner is then free to sell to anyone else on terms that are equal or better for the seller. (*Bill Signs Trucking*, *supra*, 157 Cal.App.4th at p. 1523; Greenwald & Bank, *supra*, ¶ 8:208, p. 8-44.) There is no requirement to negotiate with the right holder, either when the offer is first presented or when an offer is received from a third party following the right holder's rejection of the original offer.

Under California law, a contract is enforceable only if it is sufficiently definite for the court to ascertain the parties' obligations and determine whether those obligations have been performed or breached. (*Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 209.) Here, the 2008 promise to sell to the Chahals if (1) the Sypraserts decide to sell, (2) the Chahals make the "required improvements" or "invest[] huge sums of money into the real property and the business and inventory," and (3) the Chahals "develop a viable business[,]" is too vague and contingent to be enforced as a contract. This is because the court could not ascertain the conditions that would trigger the Sypraserts' obligation to sell to the Chahals, namely what constitutes required improvements, what constitutes a "huge" sum of money, and when the business is "viable."

Even if the 2008 oral promise is construed as a ROFO and is sufficiently certain, it is unenforceable under the statute of frauds. Pursuant to Civil Code section 1624,[3] subdivision (a)(3), a contract "for the sale of real property, or of an interest therein[,]" is invalid unless it is "in writing and subscribed by the party to be charged or by the party's

---

[3] Undesignated statutory references are to the Civil Code unless otherwise noted.

20.

agent[.]" The issue here is whether a ROFO is an interest in real property that is subject to the statute of frauds as stated in section 1624, subdivision (a)(3).

The law characterizes property interests as a bundle of rights, which includes the right to alienate property. (*In re Forchion* (2011) 198 Cal.App.4th 1284, 1308.) A landowner has a legally recognized right to sell a preemptive right in his or her property. (*Gregory v. City of San Juan Capistrano* (1983) 142 Cal.App.3d 72, 89 (*Gregory*), disapproved on another point by *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 686, fn. 43.) "It is well established that a preemptive right is a valuable property right which may be bought, sold, and enforced in a court of law." (*Gregory*, *supra*, 142 Cal.App.3d at p. 89.) An oral agreement restricting a landowner's right to alienate property is an agreement affecting title to real property and within the statute of frauds. (*Pellerito v. Dragna* (1940) 41 Cal.App.2d 85, 89; see also *Estate of Baglione* (1966) 65 Cal.2d 192, 197 ["Agreements restricting the right to alienate real property . . . are within the statute of frauds."]; *Woods v. Bradford* (1967) 254 Cal.App.2d 501, 505 ["an option to purchase real property falls within the statute of frauds and therefore must be in writing"]; *Ganiats Constr., Inc. v. Hesse* (1960) 180 Cal.App.2d 377, 383-384 [same].) Since a ROFO is a preemptive right that alienates a landowner's property rights, it is an interest in land and invalid unless it is "in writing and subscribed by the party to be charged." (§ 1624, subd. (a)(3).) Here, the Chahals admit the ROFO is oral. Accordingly, the statute of frauds precludes enforcement unless an exception applies.

The Chahals, however, assert that a ROFO is not subject to the statute of frauds because it is not technically an interest in land. The only authorities they cite for this proposition are three out-of-state cases, *Stenke v. Masland Dev. Co.* (1986) 152 Mich.App. 562 [394 N.W.2d 418] (*Stenke*), *A.S. Reeves & Co., Inc. v. McMickle* (2004) 270 Ga.App. 132 [605 S.E.2d 857] (*Reeves*), and *Stuart v. D'Ascenz* (Colo.Ct.App. 2000) 22 P.3d 540 (*Stuart*). None of the cases, however, support their position.

*Stenke* involved a lessee's action to specifically enforce an option to purchase commercial property that was part of a written lease agreement. (*Stenke*, *supra*, 394 N.W.2d at p. 420.) The Michigan appellate court rejected the appellant landowner's argument that the option constituted an unreasonable restraint on alienation and also concluded the lease did not violate that state's common-law rule against perpetuities because, under that law, the holder of an option to purchase land does not have a legal or equitable interest in the premises. (*Stenke*, *supra*, 394 N.W.2d at p. 422-423.)

Significantly, the Michigan court did not address the statute of frauds. Moreover, to the extent the Chahals are relying on the Michigan court's statement regarding whether options are property interests subject to the rule against perpetuities to show they are not property interests under the statute of frauds, the holding is directly contrary to California case law, which has held that "[a] right of first refusal is a property interest subject to the [r]ule [against perpetuities]." (*Taormina Theosophical Community, Inc. v. Silver* (1983) 140 Cal.App.3d 964, 977; see also *Strong v. Theis* (1986) 187 Cal.App.3d 913, 920 [noting both options and preemptive rights are property interests subject to the rule against perpetuities].)

In *Reeves*, the Georgia appellate court held that a written option contract for the purchase of realty was void and unenforceable because it violated the statute of frauds as it was vague and lacked essential terms. (*Reeves*, *supra*, 605 S.E.2d at pp. 858-859.) In so holding, the court rejected the option holder's argument that its tender of the entire purchase price cured the inadequate terms, noting that a mere tender or attempt at performance by one party, without acceptance by the other, cannot cure a violation of the statute of frauds in a real estate contract. (*Id.* at pp. 859-860.) Finally, in the Colorado case of *Stuart*, the court merely interpreted the language in a written lease and concluded it only granted the lessee a right of first refusal, rather than an option. (*Stuart*, *supra*, 22 P.3d at p. 541-542.)

22.

Since a ROFO is a property interest subject to the statute of frauds, and the ROFO here is oral, not written, it is unenforceable unless it falls within an exception to the writing requirement. The Chahals assert they have alleged facts that trigger the "part performance" exception to the statute based on the substantial improvements they made to the property. This doctrine is a well-recognized exception to the statute of frauds as applied to contracts for the sale or lease of real property. (*Sutton v. Warner* (1993) 12 Cal.App.4th 415, 422 (*Sutton*).) "'Under the doctrine of part performance, the oral agreement for the transfer of an interest in real property is enforced when the buyer has taken possession of the property *and either* makes a full or partial payment of the purchase price, *or* makes valuable and substantial improvements on the property, in *reliance* on the oral agreement.' [Citation.] Payment of the purchase price alone, without the buyer obtaining possession or making substantial improvements to the property, is not sufficient part performance to preclude application of the statute of frauds. [Citation.] The part performance by the buyer must clearly relate to, and must be pursuant to, the terms of the oral agreement. [Citations.] It is well recognized 'that the part performance doctrine rests on estoppel and virtual fraud rather than on livery of seisin or on evidentiary considerations. [Citations.] Two distinct elements underlie application of the part performance exception: 'first, the extent to which the evidentiary function of the statutory formalities [of the statute of frauds] is fulfilled by the conduct of the parties; second, the reliance of the promisee, providing a compelling substantive basis for relief in addition to the expectations created by the promise.'"'" (*Sutton*, *supra*, 12 Cal.App.4th at p. 422, fn. omitted.)

The Chahals' claim fails on both elements. As the Sypraserts assert, the buyer's performance "must clearly and unequivocally relate to, and must be made pursuant to, the terms of the oral agreement." (1 Miller & Starr, Cal. Real Estate (3d ed. 2011), § 1:71, p. 228; see also *Baker v. Bouchard* (1932) 122 Cal.App. 708, 711 [explaining that in order to take a contract out of the statute of frauds, "the acts relied upon as establishing

23.

part performance must be unequivocally referable to the contract[,]" and even if such acts were "in truth done in performance of a contract," if they "admit of an explanation without supposing a contract, they do not generally constitute such part performance as to remove the case from the operation of the statute."].)

Here, the alleged expenditures on improvements to the property can be fully explained by the allegation that the Chahals obtained a long-term lease in order to reap the benefits of such investments. Their actions, as alleged, are not inconsistent with their status as long-term lessees or the Sypraserts' ownership interest at the time. The Chahals specifically alleged they required a 15-year lease to protect such investments, and that their business income had increased as a result of such improvements. Thus, the FAC's allegations demonstrate the alleged improvements are completely consistent with the Chahals' long-term leasehold interest in the property and do not unequivocally relate to the purported oral ROFO.

Moreover, any reliance on the 2008 oral promise, whether characterized as a ROFO or a promise to negotiate, was unreasonable as a matter of law. (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239 [while the question of whether a plaintiff's reliance is reasonable is a question of fact, it may be decided as a matter of law "'if reasonable minds can come to only one conclusion based on the facts'"].) We agree with the trial court's finding that it would be "utterly unreasonable" to rely on the vague and conditional statement that, if the Sypraserts decided to sell in the future, they would sell to the Chahals, since there was no promise they would ever sell. Instead, the reliance was on the 15-year lease term, "which would certainly amortize the expenditures."

Since the 2008 oral promise does not satisfy the statute of frauds, it is unenforceable and cannot be the basis for the Chahals' contract claims. This leaves the alleged 2012 agreement to purchase the property. The FAC alleges that, in January 2012, the Chahals orally accepted the Sypraserts' oral offer to sell the property for $270,000; the Sypraserts then opened an escrow, and the parties further agreed the Chahals would

24.

satisfy their obligation through a $35,000 down payment and assumption of a $235,000 loan from Mid Valley secured by a first trust deed.  The FAC alleges that various attached exhibits were related to the escrow, which include escrow instructions signed by the Chahals, but not the Sypraserts.

An agreement to purchase real property is subject to the statute of frauds. (§§ 1091, 1624, subd. (a)(3); Code Civ. Proc., § 1971.)  Therefore, the alleged 2012 agreement for the sale of real property was required to be in writing signed by the party to be charged, i.e. the Sypraserts.  (§ 1624, subd. (a)(3).)  There is no allegation in the FAC that the Sypraserts signed anything, and the exhibits attached to the FAC do not contain the Sypraserts' signature.  The Chahals assert that the allegation in the FAC that they had entered into a "fully enforceable purchase agreement" pleads facts sufficient to satisfy the statute of frauds.  This allegation, however, is a legal conclusion, the truth of which we do not assume.  (*Moore*, *supra*, 51 Cal.3d at p. 125.)  Instead, it is incumbent on the Chahals to allege facts which show the statute of frauds has been satisfied or an exception applies.

The Chahals have not pled facts constituting a valid exception to the writing requirement.  The FAC alleges the Chahals fully performed the agreement by tendering the purchase price.  The payment of money, however, "'is not "sufficient part performance to take an oral agreement out of the statute of frauds" [citation], for the party paying money "under an invalid contract . . . has an adequate remedy at law."'"  (*Secrest v. Security Nat. Mortg. Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 555.)

Furthermore, the exhibits attached to the FAC show the Chahals did not tender the performance called for by them under the alleged contract.  While the FAC alleges the Chahals would assume financing of $235,000 from Mid Valley, and that Mid Valley financially qualified the Chahals to assume the financing, the May 23 amendment to the escrow instructions contradicts this claim.  The May 23 amendment mandates the execution of an all-inclusive promissory note to be secured by an all-inclusive deed of

trust, which would be taken subject to the pre-existing loan from Mid Valley to the Sypraserts and "result in the existence of a creditor-debtor relationship" between the Chahals and Sypraserts. This is contrary to both the Chahals obtaining a new loan and assuming the existing loan. Instead, it shows that Chahals did not qualify for either.

The Chahals assert the trial court exceeded its authority when it determined that the May 23 amendment contradicted the allegations of the FAC. We disagree. "Under the doctrine of truthful pleading, the courts 'will not close their eyes to situations where a complaint contains allegations of fact inconsistent with attached documents, or allegations contrary to facts which are judicially noticed.' [Citation.] 'False allegations of fact, inconsistent with annexed documentary exhibits [citation] or contrary to facts judicially noticed [citation], may be disregarded. . . .'" (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400.) The May 23 amendment shows that the Chahals would not be obtaining a new loan or assuming the existing financing, and expressly contradicts the allegation that the Chahals were to assume the existing loan. Accordingly, we must rely on the amendment.

In sum, the FAC does not allege the existence of an enforceable contract upon which the Chahals' claims for breach of contract and specific performance could be based. Accordingly, the trial court properly sustained the demurrers to these causes of action.

*The Remaining Causes of Action*

The only other causes of action the Chahals address in their opening brief are the interference claims against the Dhaliwals and the fraud claims. With respect to the interference claims, in an argument lasting precisely one sentence and without analysis or citation to authority, the Chahals assert that "[t]here are two potential bases for the interference: (1) interference with the ROFO, which obligated the Sypraserts to bring the negotiation and (ripened) right of first refusal back to the Chahals[,] and (2) the purchase agreement comprised of all the documents for the sale of the property." As a

consequence of the Chahals' affirmative burden to demonstrate reversible error based on adequate legal argument (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 556-557), when points are perfunctorily raised, without adequate analysis and authority, we pass them over and treat them as abandoned. (*People v. Stanley* (1995) 10 Cal.4th 764, 793; *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700.) We do so here.

With respect to the fraud claims, the Chahals assert, again without citation to authority or legal argument, that they adequately alleged fraud because (1) the ROFO promised that the Sypraserts would refrain from selling to a third party during the term of the lease without first offering the property to the Chahals, (2) a fraudulent misrepresentation could have occurred because either (a) the Sypraserts never meant what they said but merely offered the ROFO as a fraudulent inducement to convince them to sign the lease and invest significant time and money into the property, or (b) "somewhere along the line their intentions changed, but they let the Chahals continue to act under false understanding of their true intentions[,]" i.e. while they told the Chahals they were honoring the ROFO and would close escrow when Boualiene returned from India, they instead "secretly" sold the property to the Dhaliwals; and (3) they suffered present damages when they were deprived of the right to purchase the property, which would have permitted them to operate the business in its current location indefinitely, and it is unlikely their new landlords, the Dhaliwals, will negotiate additional lease extensions.

We decline to consider the Chahals' contentions due to their failure to support them with relevant legal authority and argument. The Chahals' bare assertions that their allegations sufficiently state a claim are wholly inadequate to satisfy their appellate burden of showing reversible error. While the Chahals do make some legal arguments in their reply brief with respect to the fraud claims, asserting that a fraud claim is not necessarily nullified merely because the promise on which it is based is subject to the

27.

statute of frauds, we do not consider arguments raised for the first time in a reply brief. (*Estate of Bonzi* (2013) 216 Cal.App.4th 1085, 1106, fn. 6; *Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 427-428.)

The Chahals do not make any arguments with respect to their other causes of action. Since they have failed to demonstrate reversible error with respect to any of their claims, we conclude the trial court did not err in sustaining the Sypraserts' and Dhaliwals' demurrers in their entirety.

*Leave to Amend*

When a demurrer has been sustained properly and leave to amend the pleading has been denied, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)

The Chahals contend the trial court abused its discretion in sustaining the demurrers to the FAC without leave to amend. As noted above, it is their burden to show how the complaint can be amended to state a cause of action. This showing, however, need not be made to the trial court; the Chahals may make this showing for the first time on appeal. (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386 (*Careau*); Code Civ. Proc., § 472c, subd. (a).) To meet this burden, the Chahals must show in what manner the pleadings can be amended and how such amendments will change the legal effect of their pleadings. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349; *Careau, supra,* 222 Cal.App.3d at p. 1388.) The assertion of an abstract right to amend does not satisfy this burden. (*McKelvey v. Boeing North American, Inc.* (1999) 74 Cal.App.4th 151, 161, superseded by statute on a different point in *Grisham v. Philip Morris U.S.A., Inc.* (2007) 40 Cal.4th 623, 637, fn. 8.).) The Chahals must set forth factual allegations that sufficiently state all required elements of a

cause of action.  (*McMartin v. Children's Institute International* (1989) 212 Cal.App.3d 1393, 1408.)  Allegations must be factual and specific, not vague or conclusory.  (*Cooper v. Equity Gen. Insurance* (1990) 219 Cal.App.3d 1252, 1263-1264.)  Where a plaintiff offers no allegations to support the possibility of amendment, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend.  (*New Plumbing Contractors, Inc. v. Nationwide Mutual Ins. Co.* (1992) 7 Cal.App.4th 1088, 1098; see *HFH, Ltd. v. Superior Court* (1975) 15 Cal.3d 508, 513, fn. 3.)

Here, the Chahals make no attempt to explain how the FAC could be amended to cure any defect and therefore fail to meet their appellate burden.  They also argue the trial court abused its discretion in sustaining the demurrers without leave to amend because in so doing, the trial court deprived them of the opportunity to conduct discovery that would provide further details, beyond those already alleged, regarding the oral promise and its substantial performance.  The Chahals, however, have not carried their burden to demonstrate there is a reasonable possibility that such discovery would enable them to properly state a cause of action.  (See *Blank*, *supra*, 39 Cal.3d at p. 318.)  Accordingly, the trial court did not err in denying them leave to amend.

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to respondents.

29.

_____
Gomes, Acting P.J.

WE CONCUR:


_____
Kane, J.


_____
Detjen, J.